3090417 consolidated with 09521 may be Keith Yunker, appellants by Scott Piles v. Farmers Automobile Management Corp. Appellant Emily by Robert Jenners. Mr. Piles, you may proceed. Good afternoon. May it please the courts, counsel. Again, my name is Scott Piles. I represent Maggie and Keith Yunker. This case is before you. The plaintiff filed a suit for declaratory judgment to declare the rights between the parties of an insurance policy that had been issued to Maggie, or to Keith Yunker, and his construction business. Back in June of 2006, after being a policyholder for several years, Mr. Yunker was sent by the defendant a premium due notice. That premium due notice indicated the premium needed to be paid by July 20th of 2006. There was also a little box indicated in this premium due notice that if the premium was not received by the due date that the policy would expire. For whatever reason, and it's not clear from the record why the premium was not paid, but it was not in fact paid by July 20th. The provision in the defendant's insurance policy, however, provided for a 20-day grace period by which an insured can inform or allow the insured to make a premium payment that was late. A 20-day grace period. There was no notice, there was nothing sent by the insured during this time to inquire of the insured whether or not, by the way, you didn't pay your premium, it needs to be paid within this 20-day grace period. There was no other notice sent between the June premium due date until August 11th, 2006. In between the two times, Mr. Junker's daughter Maggie was involved as a passenger in a serious car accident when somebody else was driving and was in fact insured by another insurance policy. What I want to make clear is this is not a situation where Ms. Junker was involved in an automobile accident. There wasn't an insurance policy premium hadn't been paid and Mr. Junker's off running to pay to get coverage. As the deck action was pretty clear, several months had to take place before the Junkers figured out what the insurance policy coverage was involved in the car that Ms. Junker was a passenger in when this collision took place. After the expiration of the 20-day grace period, the carrier sends a notice of termination to Mr. Junker indicating that his policy has been terminated for not paying a premium. If he wants to reinstate his policy within 10 days, Mr. Junker can make a premium payment, which he does within the 10 days. The issue before the court, it's our position that the policy language that's contained within the policy contracted for by Mr. Junker and by the Pecan Insurance Company and Farmers, that that policy language required the carrier to send a notice of cancellation or termination prior to the actual termination of the policy. And as the policy language is clear, the defense position is that the Shar's case and its progeny, which analyzes the Illinois Insurance Code, would indicate there's a distinction between cancellations and the expiration of a policy. I don't dispute what the Shar's and progeny cases say. The Illinois Insurance Code is relatively clear. There's a distinction. However, the language of the policy contained within the agreement between Mr. Junker and his carrier is pretty clear that a renewal is part of what is considered when giving out a cancellation notice. Now, the language in this policy indicates, and this is in the Illinois changes section of the defendant's policy. It's contained within my appendix 821, paragraphing when this policy is in effect for 61 days or more or is a renewal or a continuation policy, we may cancel only for one or more of the following reasons by mailing a written notice of cancellations stating the reasons for cancellation. One of the reasons for cancellation that they can do is for nonpayment of premium. Now, if they do cancel for nonpayment of premium, we will mail you at least 10 days written notice. Now, the question is, does by virtue of the written policy language in the Illinois changes of the defendant's policy, did this require the insurer in this case to notify Mr. Junker that his policy was being terminated, canceled before the 8-11-2006 policy or termination notice was given? Mr. Junker, and to add to this, if you read the defendant's briefs in this, they make a very clear indication this is not a cancellation. This policy just merely expired. However, that's not what the defendant's position was when this was going on. When Mr. Junker went in after he received his notice that his premium payment was not, had not been paid and he went to go pay it, they issued him a receipt, and this receipt is included in my appendix. It's also in the record at 840. The receipt is very clear. It shows the transaction. It indicates that this policy is currently canceled, not expired, not a non-renewal or any other term. According to Pekin, the policy was canceled, and that's in the language that's in the receipt that was given by the defendant's insurer to my client when they came in and made their scheduled premium payment. It is our position that this case, that when Mr. Junker came in and purchased this policy, and he was a policyholder for several years, that he was getting certain protections within this policy that were above the floor of the minimum requirements of the Illinois Insurance Code. And one of those things that he received was the fact that he was given a grace period to make his premium payments, 20 days. That's not something that's found in the insurance code with regard to, which is in this case, an expansion of when he gets notice that they are canceling his policy. And it's very clear that a renewal is indicated in one of those times when they're talking about what a cancellation is. Now, the policy, the Pekin policy, it's a question here, also relies on a section, and it's in A16 of my appendix, the automatic termination. And in that section, that is the provision that allows for the insurance carrier to terminate. I mean, that's what the caption of it reads. If they don't receive the premium, well, you're going to terminate your policy. However, if you look at the language that is in the policy, the section is automatic termination. We offer to renew or continue, and you or your representative do not accept. This policy will automatically terminate it at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have to accept it or offer. That's the language that is used in that section. Clearly, realistically, there's a typographical error in there that probably would indicate maybe the word not should have been put in there. And it's not. It's not in there. And that particular section is ambiguous due to the language that's used in that section. And that's presumably the authority that the defendants use in terminating my client's policy. Now, within the argument that was made by the defendants is that, well, Ashar's case is very clear. This is an exploration of the policy. The policy is simply expired, and there's no need to give any notice. And I agree that Ashar's and his progeny cases indicate that. But they are interpreting the Illinois Insurance Code, not the language that is contained within the defendant's policy. The cases are very clear. There are two things you look at. You look at the Illinois Insurance Code, and you also look at the policy language that the parties, in this case Mr. Juncker and the carrier, agree to. And one of the things that it would seem to indicate in the policy in the Illinois changes section is that when they're canceling, under the section cancellation, a renewal is included within the category that they can only cancel unless they send a written notice. And in the case of a nonpayment of premium, it's 10 days. For other things, such as if there was a violation of policy, there's a longer period of time, it's 30 days. And the defendant's position here, though, is very simple, is that this policy simply expired. And my question would be, if the policy had simply expired and there was no value, why would the defending carrier have to send out a notice of termination on August 11th? If there wasn't a premium payment made and the policy simply expired, why did they have to send a notice out to terminate it? The policy simply expired and there was no longer a relationship between Mr. Juncker and the defendants. Why would they have to send out a notice indicating that it was terminated? And it's pretty clear that what happened is that the insurer, in this case, screwed up. And they failed to send a notice after the due date had passed, but within the grace period indicated, you know, we didn't receive your premium payment. If you're intending to continue this policy, you need to pay within the 20-day grace period in order to maintain continuous coverage. Now, it's LOA law, and I just cited the cases in my brief, that indicate that an insurer has a duty, and it talks about the Schumer's case, in fact. The insurance company has a duty to reasonably notify their insurers that premiums are due. And in this particular case, I would suggest to you it was reasonable that following the July 20th date that the insurer sent a notice to Mr. Juncker indicating, hey, we didn't receive your premium payment. You've been a policyholder for several years. Are you getting a new carrier, or did you simply forget? When they did send a notice to Mr. Juncker after the policy had been terminated, and they gave him the 10 days to reinstate, he paid within the 10 days. Now, this case is before you on a grant for summary judgment. Obviously, I've cited the cases indicating we're entitled to inferences that emanate from some of the pleadings and the record that indicate here. I think one of the inferences that we're entitled to is that Mr. Juncker didn't get his premium due notice. I'll give you two minutes. Thank you. And if the insurer had sent a notice informing my client of his grace period that he was given under the policy, it's a contention that that would have been paid within that time period, and there would not have been a lapse in coverage. Well, he did get a premium due notice, and it said this will be your only notice. But your contention, as I understand it, is that under the Illinois changes, and because he had been a longstanding customer, that he was entitled to an additional notice of a grace period? Your Honor, if you look at the premium due notice that's in the record, in any case, that is the last note before the premium due date. It doesn't say it's going to be the last notice. He could have given a notice after the premium due date, but during the grace period that it was covered under the policy. And it's my contention that the insurer had a duty under that grace period to ensure that there was continuous coverage, that there was going to be coverage. And it's not just for Mr. Juncker, it's for everybody else on the road. We have to have insurance in Illinois, and I think that the insurer needed to take that extra step, and they didn't do that here. The two cases cited by the defendant, the Schar's case, and I believe in the Lebrizzi case, there were two notices sent to the insurance in that case. I know in the Schar's case there was. They sent out a notice indicating the premium's due. After the premium due date went by, State Farm sent a second notice to their insurance saying, Did you forget to pay your premium? You need to pay it by next day in order to maintain continuous coverage. The insurer in that case did not pay during that second chance either, and then the litigation in Schar's developed. And I would indicate to you, if the counsel for the defendant is going to rely on those cases, he also needs to rely on the fact that the insurer in that case gave two notices to their insurer to attempt them to get to pay the premium. Your time is up. I ask that the court reverse this matter to the trial court. Thank you. Mr. Chemers, you may respond. Thank you, Your Honors. May it please the court. Counsel for the defendant, Apple Lee Cross Appellant, Pekin Insurance Company, Robert Chemers from Pretzel and Stalker in Chicago. Your Honors, this is not a case about policy cancellation. It's a case about policy lapse. Mr. Piles, when he addressed this court, admitted a very salient fact. His client received the June 14, 2006 notice of premium due. His client was armed with 36 days advance warning to pay a premium on or before July 20, 2006 or the policy would expire. Justice McDade, you hit it on the head. The notice of June 14, 2006, which the plaintiff insured admits was received, states, this is the only notice you will receive prior to the date premium is due. Your policy will expire if premium is not received by the due date, which is July 20, 2006. Admittedly, in this case, premium was not received by the due date. Condition N to the policy provides the 20-day grace period. But you can't point to anything in the policy that says Pekin must give notice of the 20-day grace period or to anything in the Illinois Insurance Code that says you must give notice of the grace period. When the grace period expired on August 9, Pekin followed that with a notice of policy termination, effective the date they promised it would be terminated if they weren't paid, July 20, 2006. That notice indicated that contrary to what was indicated, why was it sent? It was sent to continue a business relationship. It pointed out the policy was terminated and the policy could be reinstated if the premium payment plus a $10 reinstatement fee was made on or before September 3, 2006. We have a situation here where based on the admissions of the plaintiffs, they admit they received the June 14, 2006 notice. They admit they were aware the premium was due on or before July 20, 2006. And they admit they did not pay the premium until almost one month later, August 18, 2006. They made the premium payment 29 days later, 11 days after the accident, nine days after the expiration of the grace period. Again, this is not a cancellation case. The large chart that Your Honor saw with respect to the provision of the policy concerning cancellation and non-renewal doesn't apply. Could you give me an example of one that would apply? Because that's where I'm a little confused where you say it isn't a cancellation, it's just an expiration, and yet under cancellation it says non-payment of premium. And if you look, Your Honor, at the notice of policy termination, contrary to what you were just told by plaintiff's counsel, the reason for termination was not non-payment of premium. The reason for termination was expiration. The policy expired. They were told pay the premium by this date or the policy will expire. Cancellation requires an affirmative act of an insurance company before the cancellation date to terminate the policy before the expiration date. That is the precise definition from the insurance code. So that would be an example if you were a premium due in the midst of a policy period? Correct. That would only be? Assumed for the sake of discussion, Your Honor, that instead of the June 14, 2006 notice saying you have until July 20 to pay $482, it said you had until July 1, and they didn't pay it. And then the policy could be canceled then. Canceled for non-payment of premium. It requires an act by the insurer to terminate the policy before the expiration date. Specifically, the Illinois Insurance Code, and this is cited throughout the briefs at 215 ILCS 5-143.13G, defines cancellation. And it says cancellation or canceled means the termination of a policy by an insurer prior to the expiration date of the policy. Prior to the expiration date. Here they were told the expiration date is July 20. Now, the legislature, following the Supreme Court decision, and sheriffs put in the definition of cancellation, as if they were on prescient, the facts of this case that says, in the definition of the insurance code, a policy, and I'll paraphrase, a policy of automobile insurance, which expires by its own terms on the policy expiration date, July 20, unless advanced premiums are received by the insurer for succeeding policy periods, shall not be considered canceled or a cancellation affected by the insurer in the event such premiums are not paid on or before the policy expiration date. That provision was put in the insurance code in the late 70s, following the 1975 decision of the Supreme Court and sheriffs. The Supreme Court recognized that it takes an act by the insurer before the expiration date to cancel the policy. That didn't happen here. This policy expired on its own terms. They were told, you don't pay, you're not going to be covered. The Labrise versus State Farm case is interesting because there, a similar result was affirmed by the First District, where the trial court made the almost omnipotent comment to all in his courtroom. If you don't pay, the policy won't be renewed. Everyone knows. Everyone in this room knows that is what the trial court in that case said. It's the same thing here. You don't pay the premium, you're not going to be covered. They admit they got the notice. They admit they had 36 days' notice of when to pay the premium and how much it would be, and then they admit they paid it 29 days later. And what they argue is that it's cancellation, but it's not, and they can't point to anything in any notice they received that even refers to the word cancel, cancellation, or non-renew. It's all the same. It's expired. The due date is July 20th. It's not paid. The policy expires. It's over. Then Condition N says, We will automatically continue this for 20 days, provided within that 20-day period the premium is paid. If it's not paid, it's over. And what happened here, why they are making the arguments about ambiguity without any basis, is the accident intervened. June 14, 2006 notice, July 20, 2006 expiration, August 7, accident, August 9, termination of the grace period, August 18, premium paid, inexplicably paid, paid 29 days late, 11 days after the accident, and 9 days after the grace period without any explanation whatsoever. And they can't point to a thing in that policy that says Pekin has an obligation to give notice of the grace period, nor can they point to any provision or any provision of the insurance code or any case that stands for the proposition you have to give notice of a grace period, whereas here you properly, in accordance with the law, terminated a policy by its own terms. We have asked in the trial court, and we are asking in this court to address on our cross-appeal the issue of attorneys' fees under Supreme Court Rule 137, which is something we don't take lightly. We don't take it lightly because it's not something we do all the time. This is a case where we are of the mind that counsel for the insured made no reasonable inquiry. We have no idea what his knowledge was about cancellation, expiration, or the like at the time this lawsuit was filed. However, within one month, he got a four-page letter from me which laid out the law in connection with a policy expiration. It cited the Librisi case. It cited the Sciarris case. In fact, if your honors compare Judge Petra and Garrow's memorandum of opinion, granted summary judgment to my client, in many respects, her ruling tracks my June 25, 2008 letter to counsel. It also tracks the argument we made in support of our motion for summary judgment. We laid out the law. We set forth in that letter as if we were in federal court under Rule 11, safe harbor. Take a look at the law. We're giving you a safe harbor. Take the time you need to review these cases and then withdraw your lawsuit if you agree with our position. No response. July 7, 2008 letter said, we haven't heard from you. We're going forward. We intend to seek to recover fees. At the time we filed our appearance and our motion to dismiss, we filed a notice of intent under 137 seeking to recover our fees. After judgment was entered, which is almost one year after the date this suit was filed, it sent another letter to counsel for the plaintiff suggesting that before he takes an appeal, he make an offer to us. I laid out what our fees were. I said, look at it now before we put this in a 137 motion for sanctions, which we did, which was denied, hence our cross-appeal. We submit to the court that although deference is given to the sound discretion of the trial court, there is still an objective standard under 137. And the standard is if at the time the complaint was filed, it can be shown that the theory advanced had no basis in law or in fact sanctions should issue. As I said, we have no idea what counsel knew at the time he filed suit. However, we do know what he knew within 30 days of filing because he received my June 25, 2008 letter. Which set forth the law, which set forth the very reason the circuit court granted summary judgment for peak and insurance in this case. This is not a case of cancellation or non-renewal. It is a case of a policy expiring by its own terms and by admissions of counsel that pled his clients out of coverage. He admitted they received the notice. He admitted they were armed with 36 days advance notice of when to make their payment and they didn't do it. And he admits that they made their payment 29 days late. The Sheriff's case and the Librisi case both commented, Librisi in particular, about making a tough decision on tough facts. And that it's tough to make a decision in a case where someone is denied benefits for a tragic auto accident. However, the law is the law and the law in this case requires that this court, I submit, affirm the judgment entered by the trial court. And we ask the court with respect to the ruling on fees to reverse that. And to find that this type of conduct, where is here a letter is sent laying out the law, offering a safe harbor. And then throughout the briefs, no tenable argument is made about cancellation. However, the point of fact, and based on the clear policy language in the notices, this was policy expiration on its own terms. The premium wasn't paid. There is nothing in the policy, nothing in the case law, and nothing in the insurance code requiring Deakin to do anything after the policy was terminated. What they did do was they sent the notice of termination, August 11, 2006, advising the policy was terminated July 20. And offering to reinstate it, reinstate it effective the date the money was received. Which in this instance was August 18, 2006, which was 11 days after the accident in question. For those reasons, your honors, unless there are questions, I'd ask the court, affirm the judgment for Deakin Insurance, and reverse in connection with the fee issue. Thank you. Thank you, Mr. Chambers. Mr. Piles, you may reply. I want to correct a few things that were made from the record, assertions made by defendants. If you look at the policy termination, the defendant's counsel indicated that the policy was terminated because it expired. That's not what the notice says. The notice indicates, and this is in my brief at appendix 39, in the body of the termination, this policy has been terminated since full payment was not received. Non-payment of premium. That's why the policy was terminated. Now, counsel says I can't point to anything where it says anything was canceled. I can't show anything. There's nothing in the record where anything was canceled. The word cancellation isn't anywhere. It is on the Deakin materials that the policy is currently canceled, not expired, not terminated. Canceled. Canceled is the word in the Deakin receipt, in the Deakin records. I don't think there's anything in the record that indicates that we admitted that we received the premium due notice. I think we acknowledge the existence of it, but there's nothing in the record that indicates that we had it. I agree that it was sent. Obviously, the records, when the materials came in, I saw it. I would just suggest to the court that the Sharris case, like I said, I don't have any dispute with which of the Sharris and the Shep case, but the language of those policies is different than what is in the PICA insurance policy that indicates under the section of cancellation, a renewal is included within those things that are considered under the umbrella of cancellation, and that a nonpayment of premium is one of the reasons that can be canceled, and if they cancel for a nonpayment of premium, they have to mail at least 10 days' written notice. The defendant's counsel argument says nothing about their own policy language. They would rather rely on the Sharris case. They don't discuss the fact there's ambiguities in their policy regarding the automatic termination. That's not discussed. They want to rely on the Sharris case. However, you have to look at the policy. Their own definition indicates a renewal is part of what is considered under the umbrella of cancellation in their policy, and they can't get around that, and that's why it's not discussed or talked about in the briefs or in arguments. The suggestion is that I'm subject to sanctions because I didn't make a tenable argument. I'm going to rest on my brief with regard to that. I think the trial court's decision, if it's an abuse of discretion, that's reversed. I would indicate to the court for the time that I've been here, if there wasn't a really or if it was a simple issue, the court would ask to have an oral argument waived and indicate in this case that wasn't done, and that would simply tell me that there were some issues that were involved that required argument, and I would suggest use that as a basis for saying that I do have a tenable argument here because the defendant's own policy under cancellation indicates that a renewal is part of it. There was an example given by Mr. Chen was talking about, well, if there's a continuation of payment. Well, that's a continuation policy, where there's a premium payment made, the policy continues, where you're making a monthly payment. That's a continuation policy. This is a renewal. If you look at the renewal notice that is contained in the materials, and it is in my brief at Appendix A37, if you look at it, under the box, it indicates the enclosed declaration represents the renewal of your policy. And that's under the notice of premium due. Now, I would suggest to you that this is very clear, that a renewal by the virtue of the defendant's own language in their policy fits within the umbrella that requires a ten-day notice before they terminate. If there's an ambiguity regarding this language that is in the defendant's policy, I'm sure the court is well aware of the Illinois law, that any ambiguities with regard to that are construed against the drafter of that policy, the defendant in this case. Actually, I think it's a very simple case. The policy language by their own writing indicates that a renewal falls under the umbrella of the Illinois changes and cancellation. One of the reasons is non-payment of premium, and they have to give a ten-day written notice to do that. Your time is up. Thank you. Thank you, Mr. Ponce. Thank you, counsel, for your arguments in this matter this afternoon. It will be taken under advisement and a written disposition.